UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMILCAR ANTONIO AVALOS RAMOS,

Petitioner,

v.

ANTONE MONIZ, Superintendent of Plymouth
County Correctional Facility,

Respondent.

Civil Action No. 1:25-CV-10268-AK

## RESPONDENT'S MEMORANDUM IN OPPOSITION TO PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C § 2241

Respondent Antone Moniz ("Respondent"), Superintendent of the Plymouth County Correctional Facility ("PCCF"), by and through his attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submits this opposition to Amilcar Antonio Avalos Ramos' ("Petitioner") Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"). Doc. No. 1. Respondent responds to the Petition as contemplated by Rules 4 and 5 of the Federal Rules Governing Section 2254 cases and in accordance with the Court's Service Order.[1] Doc. No. 10.

Contrary to Petitioner's claim, his arrest and subsequent detention by U.S. Immigration and Customs Enforcement ("ICE") is fully supported by the Immigration and Nationality Act

---

[1] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

("INA"), its implementing regulations, and the Constitution.  As such, this Court should not order his release and his Petition should be denied.

## INTRODUCTION

Petitioner has illegally entered the United States twice and has been removed to El Salvador previously.  He is subject to a final order of removal from the United States, but he has claimed a fear of return to El Salvador and is therefore pursuing withholding-only proceedings before an Immigration Judge ("IJ") in Immigration Court.  ICE arrested and detained Petitioner in 2023 but released him on an Order of Supervision as authorized by 8 U.S.C. § 1231(a)(3).  However, ICE recently revoked such Order of Supervision pursuant its regulatory authority so ICE could expedite his proceedings before the Immigration Court and effectuate his removal order to El Salvador if he is unsuccessful in challenging his removal.[2]

Petitioner claims his detention violates 8 U.S.C. §§ 1231(a)(3) and 1231(a)(6) and the Fifth Amendment's Due Process Clause.  Both claims fail, however.

Section 1231(a)(6) permits detention at ICE's discretion for individuals who are pursuing withholding-only proceedings and the Supreme Court held in *Johnson v. Arteaga-Martinez* that this provision does not authorize bond hearings to allow individuals to seek release.  596 U.S. 573, 574 (2022).  As such, his claim that he is entitled to release is foreclosed by Supreme Court precedent.  Petitioner also attacks the procedure ICE used to revoke his Order of Supervision and return him to custody.  This challenge also fails as ICE complied with the relevant regulations that provide ICE with ample discretion to revoke release.

---

[2] As explained below, even if Petitioner succeeds in his claim of withholding of removal, such protection attaches only to removal to El Salvador.  Per 8 U.S.C. § 1231(b), ICE could seek to remove Petitioner to an alternative country because he would remain subject to a final order of removal from the United States.

As to his Due Process claim, the Supreme Court also set forth a framework for analyzing the Constitutionality of post-final order detention under Section 1231(a)(6) in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).  In *Zadvydas*, the Court held that post-final order detention under Section 1231 is presumptively reasonable for six months.  *Id.* at 701.  An individual seeking release after six-months of post-final order detention must first "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]"  *Id*. Only after meeting this initial burden is the Government required to "respond with evidence sufficient to rebut that showing."  *Id.*

The U.S. Court of Appeals for this First Circuit applied this *Zadvydas* framework in *G.P. v. Garland*, 103 F.4th 898, 901-02 (1st Cir. 2024) and held that an alien detained by ICE for more than four years while he pursued withholding-only protection could not meet his initial burden because his detention was not indefinite—it would end upon the conclusion of the proceedings with a release into the United States or a removal outside the United States.  Here, Petitioner has been detained for less than six months, and therefore his Constitutional challenge to Section 1231(a)(6) detention is premature, even if it was not destined to fail based on First Circuit precedent.

## STAUTORY AND REGULATORY FRAMEWORK

### A.  8 U.S.C. § 1231 and *Zadvydas*

An individual who has been removed from the United States pursuant to a final order of removal, and who thereafter re-enters the United States illegally, is subject to a statutory provision that allows immigration authorities to reinstate the original removal order and proceed

with removal again.  8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8; *Johnson v. Guzman Chavez,* 594 U.S. 523, 529 (2021).

Removal, however, cannot immediately proceed if the individual expresses a fear of return to his home country.  8 C.F.R. § 241.8(e).  And, if his fear is deemed reasonable by an asylum official, the individual is entitled to file an application for withholding of removal and protection under the Convention against Torture in Immigration Court.  8 C.F.R. § 208.31.  Such an individual is in withholding-only proceedings before an IJ and can appeal the IJ's decision to the BIA if his protection application is denied.  *Id.* § 208.31(e).  Even if an IJ grants a noncitizen protection from removal, such individual nonetheless remains subject to a final order of removal and ICE can seek to remove the noncitizen to a third country.  8 U.S.C. § 1231(b); *Guzman Chavez,* 594 U.S. at 531-32.

The Supreme Court, in *Guzman Chavez*, held that the statutory authority to detain and remove a noncitizen with a reinstated final order of removal is found within 8 U.S.C. § 1231.  *Id.* at 533.  Section 1231(a)(1)(A) directs immigration authorities to remove a noncitizen with a final order of removal within a period of 90 days—this is known as the "removal period."  During the removal period, § 1231(a)(2) commands that ICE "shall detain" the noncitizen.

If, however, the removal period has expired, ICE can either release an individual pursuant to an Order of Supervision as directed by Section 1231(a)(3) or may continue detention under Section 1231(a)(6).  Per Section 1231(a)(6), ICE may continue detention beyond the removal period for three categories of noncitizens:

- Noncitizens who are inadmissible to the United States pursuant to 8 U.S.C. § 1182;

- Noncitizens who are subject to certain grounds of removability from the United States pursuant to 8 U.S.C. § 1227; or

- Noncitizens whom immigration authorities have determined to be a risk to the community or "unlikely to comply with the order of removal."

*See Guzman Chavez*, 594 U.S. at 528-29.

In *Zadvydas v. Davis*, the Supreme Court held that the government cannot detain an alien "indefinitely" beyond the 90-day removal period. 533 U.S. at 682. The Supreme Court "read an implicit limitation into the statute … in light of the Constitution's demands" and held that Section 1231(a)(6), "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States." *Id.* at 689. The *Zadvydas* Court held that post-removal detention for six months is "presumptively reasonable." *Id.* at 701. Beyond six months, the Supreme Court explained, a noncitizen could bring a claim in a habeas petition seeking release. *Id.* at 700-01. In such a proceeding, the Supreme Court instructed, the noncitizen must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701. If the noncitizen does so, the burden would then shift to the government to produce "evidence sufficient to rebut that showing." *Id.*

## B. Post-Order Custody Regulations

ICE issued Post-Order Custody Regulations ("POCR") contained at 8 C.F.R. § 241.4 to set forth mechanisms concerning custody reviews, release from ICE custody, and revocation of release for individuals with final orders of removal.

### 1. The 90-Day Custody Review

The regulations require ICE to conduct an initial custody review based on the individual's immigration record and any documents submitted prior to the end of the removal period—this is known as the 90-day custody review. *Id.* § 241.4(h). In deciding on custody, ICE is guided by factors that include ties to the United States, prior immigration violations and history, and the likelihood that the individual represents a flight risk or may abscond to avoid removal. *Id.* § 241.4(f).

5

### 2.    Release and Revocation of Release

As noted above, ICE can release an individual pursuant to an Order of Supervision if removal has not been accomplished.  8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.4(j).  By regulation, ICE has significant discretion to revoke an Order of Supervision and return an individual to custody.  8 C.F.R. § 241.4(l).  ICE can revoke release when an individual violates conditions of release.  *Id.* § 241.4(l)(1).  Additionally, ICE can revoke release when "[t]he purposes of release have been served," when "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien," or when "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate."  *Id.* § 241.4(l)(2)(i)-(iv).

When ICE revokes release of an individual under 8 C.F.R. § 241.4(l), ICE must conduct an "informal interview" to advise the individual of the basis for revocation and must also serve the individual with a written notice of revocation.  If ICE determines revocation remains appropriate after conducting the informal interview, then ICE will provide notice to the individual of a further custody review that "will ordinarily be expected to occur within approximately three months after release is revoked."  8 C.F.R. § 241.4(l)(3).

### 3.    The 180-Day Review

If ICE maintains the individual in custody after the 90-day custody review, or after revocation of release, then further review of detention occurs three months later.  *Id.* §§ 241.4(i); 241.4(l)(3).  As part of the 180-day custody review, two ICE officers—a "Review Panel"— review the individual's immigration record, any information submitted by the individual, and conduct a personal interview.  *Id.*  Following completion of the interview, the Review Panel issues a written recommendation as to the individual's custody status to an ICE official at ICE

Headquarters.  *Id.* § 241.4(i)(5).  The ICE Headquarters official considers the custody recommendation, custody materials, and issues a custody determination.  *Id.* § 241.4(i)(6).

If detention is still deemed appropriate, ICE will periodically conduct further reviews thereafter.  *Id.* § 241.4(i)(3), (k)(1)-(2).  Separately, the individual may present a written request that he should be released from detention because there is no significant likelihood he will be removed in the reasonably foreseeable future.  8 C.F.R. § 241.13(d)(1).  Upon receipt of a substantiated claim, ICE will analyze the likelihood of removal under the circumstances.  *Id.* § 241.13(f).  Specifically, an eligible individual "may submit a written request for release," together with "whatever documentation" he wishes "in support of the assertion that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.* § 241.13(d)(1).  ICE will then review the case and ultimately "issue a written decision based on the administrative record."  *Id.* § 241.13(d)–(e), (g).

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Immigration History

Petitioner is a native and citizen of El Salvador who first entered the United States in 2006 without inspection or admission by an immigration official.  *See* Declaration of Assistant Field Office Director, Keith Chan ¶ 7 attached as Exhibit 1.  ICE encountered Petitioner in 2008 due to a criminal arrest.  *Id.*  In 2009, Petitioner was ordered removed from the United States and was deported by ICE to El Salvador.  *Id.*, ¶¶ 7-8.

Petitioner re-entered the United States without inspection or admission at an unknown place and unknown time.  *Id.*, ¶ 9.  Petitioner came to ICE's attention in January 2023 after his arrest for domestic assault and battery.  *Id.*, ¶ 10.  ICE arrested and detained Petitioner and reinstated his prior order of removal per 8 U.S.C § 1231(a)(5).  *Id.*

Petitioner expressed a fear of return to El Salvador and his removal to El Salvador was therefore halted to allow him to pursue withholding-only proceedings in Immigration Court.  *Id.*, ¶¶ 10-11. On May 3, 2023, ICE released Petitioner pursuant to an Order of Supervision which included Alternatives to Detention ("ATD") monitoring as part of the release conditions.  *Id.*, ¶ 12.  ICE observed multiple ATD violations from Petitioner between June 2023 to December 2024.  *Id.*, ¶ 13.

On January 26, 2025, ICE, pursuant to 8 C.F.R. § 241.4(l), revoked Petitioner's Order of Supervision.  *Id.*, ¶ 14. ICE, with an increased focus on effectuating the removal of individuals with final orders of removal, determined that revocation of release was appropriate so Petitioner's withholding-only proceedings could be expedited by moving his case to the Immigration Court's detained docket.  *Id.*  Post-arrest, ICE conducted an informal interview to advise Petitioner of the basis for revocation and issued a written notice of revocation.  *Id.*, ¶¶ 15-17.

Since the revocation of Petitioner's release, ICE moved to transfer his proceedings to the Immigration Court's detained docket and to advance his proceedings.  *Id.*, ¶ 18.  An IJ allowed such motions and moved Petitioner's hearing from December 15, 2025 to March 31, 2025.  *Id.*  If the IJ denies Petitioner's applications for protection from removal to El Salvador, ICE will move to expeditiously effectuate Petitioner's removal to El Salvador as such removals are performed on a routine basis.[3]  *Id.*, ¶ 20.

### B.  Procedural History

Petitioner filed this Petition on February 3, 2025 and asks this Court to order his

---

[3] If Petitioner's applications are denied by the IJ, he can appeal to the Board of Immigration Appeals which will stay ICE's removal efforts.

immediate release as he claims that his arrest and detention violate statute, regulation, and the

Constitution.  Doc. No. 1.  In his first cause of action, Petitioner asserts his detention violates 8

U.S.C. §§ 1231(a)(3) and 1231(a)(6) and associated regulations because "ICE knows it cannot

effect his prompt removal from the United States," because he "is neither a flight risk nor a

danger", and because he "has not violated the conditions of his Order of Supervision".  *Id.*, ¶ 45.

Petitioner claims his detention violates the Fifth Amendment's Due Process Clause for the same

reasons.  *Id.*, ¶ 50.

## ARGUMENT

ICE's detention of Petitioner is authorized by statute and regulation and does not offend

the Constitution—as such, this Court should deny the Petition.

### A.  ICE's Revocation of Petitioner's Order of Supervision was Lawful

Petitioner's claim that his arrest violated 8 U.S.C. § 1231(a)(3) and its implementing

regulation because he had not violated conditions of his Order of Supervision and he is not a

flight risk or danger to the community is without merit as ICE exercised its significant discretion

in revoking his release in a lawful manner.  Section 1231(a)(3) is silent as to revocation

procedures, but directs that regulations be implemented to prescribe supervision and revocation

measures.

Such regulations, as pertinent to this matter, are contained at 8 C.F.R. § 241.4(l) and

provide significant discretion to ICE to revoke release.  *See Leybinsky v. U.S. Immigr. &

Customs Enf't,* 553 F. App'x 108, 110 (2d Cir. 2014) (Remarking on the "broad discretionary

authority the regulation grants ICE" to revoke release."); *Rodriguez v. Hayes*, 591 F.3d 1105,

1117 (9th Cir. 2010) (Explaining that while the revocation regulation "provides the detainee

some opportunity to respond to the reasons for revocation, it provides no other procedural and no meaningful substantive limit on this exercise of discretion ….").

Petitioner is correct that ICE can revoke release when an individual violates conditions of release. *See* 8 C.F.R. § 241.4(l)(1). But, the regulation provides for revocation in additional circumstances such as when ICE determines that "[t]he purposes of release have been served," or when ICE finds that "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien," or when ICE determines that "[t]he conduct of the alien, *or any other circumstance,* indicates that release would no longer be appropriate." *Id.* § 241.4(l)(2)(i)-(iv) (emphasis added).

Here, ICE issued Petitioner a written revocation notice explaining that ICE was revoking his release pursuant to 8 C.F.R. § 241.4 as it had determined that Petitioner could be removed from the United States pursuant to his final order of removal. Doc. No. 1-2. As explained by Assistant Field Office Director Chan, ICE's revocation decision was driven by an increased focus by ICE on effectuating removal orders and therefore ICE determined that taking Petitioner into custody to expedite Petitioner's withholding-only proceedings in Immigration Court was appropriate. Exhibit 1, ¶ 14. Once Petitioner was returned to custody, ICE filed motions with the Immigration Court to transfer his case to the court's detained docket and advance his proceedings which the IJ allowed by moving his hearing from December 15, 2025 to March 31, 2025. *Id.*, ¶ 18. As noted, at the conclusion of these proceedings, ICE will be able to effectuate removal to El Salvador if Petitioner's applications are denied, or even possibly to a third-country if Petitioner is successful in challenging removal to El Salvador. *Id.*, ¶ 20.

Therefore, by revoking release, ICE complied with the regulation that allows revocation when ICE determines that it "is appropriate to enforce a removal order or to commence removal

proceedings against an alien" and when ICE finds that "any other circumstance[] indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2).  As explained by another session of this Court, when ICE "determined that revocation was necessary to initiate Doe's removal … [n]o further justification was required."  *Doe v. Smith*, No. CV 18-11363-FDS, 2018 WL 4696748, at *11 (D. Mass. Oct. 1, 2018).

Petitioner also complains that ICE revoked his Order of Supervision "without any reason given and without any advance notice".  Doc. No. 1, ¶ 34.  ICE, however, did conduct 8 C.F.R. § 241.4(l)'s required "informal interview" with Petitioner on January 26, 2025 to explain the basis for his revocation and served him with a written notice of revocation soon after his arrest.  Exhibit 1, ¶¶ 15-17.  And, as numerous courts have recognized, ICE is not required to provide advance notice of its intent to revoke release for the obvious reason that could encourage flight or increase law enforcement safety concerns.   *Doe*, 2018 WL 4696748, at * 7 (Explaining that the "regulation does not require that a petitioner or her counsel be given 30 days' notice prior to the initial informal interview."); *Moran v. U.S. Dep't of Homeland Sec.*, No. EDCV2000696DOCJDE, 2020 WL 6083445, at *9 (C.D. Cal. Aug. 21, 2020) (Expressing skepticism about "the source of any due process right to advance notice of revocation of supervised release or other removal-related detention.").

As such, Petitioner's claim that ICE's arrest and detention of Petitioner violated statute and regulation fails as ICE exercised its ample discretion in revoking Petitioner's release.

### B.  Petitioner is Lawfully Detained Pursuant to 8 U.S.C. § 1231(a)(6)

Petitioner's assertion that his detention violates 8 U.S.C. § 1231(a)(6) is without merit.  Petitioner claims that ICE "has no permissible basis" for his detention because ICE is unable to "effect his prompt removal from the United States" and because he has not violated conditions of

his Order of Supervision, and he is neither a flight risk or danger to the community.  Doc. No. 1,

¶ 45.   However, the plain language of the statute allows for continued detention beyond the

removal period for three categories of noncitizens:

- Noncitizens who are inadmissible to the United States pursuant to 8 U.S.C. § 1182;

- Noncitizens who are subject to certain grounds of removability from the United States pursuant to 8 U.S.C. § 1227; or

- Noncitizens whom immigration authorities have determined to be a risk to the community or "unlikely to comply with the order of removal".

Petitioner is inadmissible to the United States under at least two provisions of the INA.

First, Section 1182(a)(6)(A)(i) applies to noncitizens, such as Petitioner, "present in the United

States without being admitted or paroled."  Second, Section 1182(a)(9)(C) renders noncitizens,

such as Petitioner, who have been ordered removed from the United States, and who then re-

enter without being admitted, inadmissible.  As such, Petitioner is mistaken that Section

1231(a)(6) only authorizes detention for individuals who have violated conditions of release or

whom ICE has deemed to be a danger to the community and a flight risk.

The Supreme Court, in *Guzman Chavez*, held that § 1231(a) applies to individuals with

pending withholding-only proceedings.  594 U.S. at 533.  The Supreme Court, in *Johnson v.

Arteaga-Martinez*, then held that § 1231(a)(6) allows for detention at ICE's discretion and does

not contemplate bond hearings for individuals who meet the criteria for continued detention,

such as Petitioner.  596 U.S. at 580-81.  The Supreme Court explained that Section 1231(a)(6)'s

plain text "says nothing about bond hearings before immigration judges or burdens of proof" and

therefore held no such statutory requirement to conduct bond hearings existed.  *Id.* at 581.

Another session of this Court recently analyzed a habeas claim from an individual, like

Petitioner, whose removal order had been reinstated and was pursuing withholding-only

proceedings and concluded that his "detention is authorized by § 1231(a)(6)" as such "finding

comports with the text of the statute as well as with recent Supreme Court precedent." *Quezada-Martinez v. Moniz*, 722 F. Supp. 3d 7, 11 (D. Mass. 2024).

As such, Petitioner's claim that his detention violates Section 1231(a)(6) and that he should be ordered released is foreclosed by the plain language of the statute and Supreme Court precedent.

### C.  Petitioner's Statutorily Authorized Detention is Constitutional

Petitioner also argues that his detention violates the Fifth Amendment's Due Process Clause because ICE "cannot effect his prompt removal from the United States" and because he did not violate his conditions of release and because does not believe himself to be a flight risk or danger to the community.  Doc. No. 1 at ¶ 50.  This claim fails, however.  As recognized by the Supreme Court, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003).  As explained by the Supreme Court, when evaluating "reasonableness," the touchstone is whether a noncitizen's detention continues to serve "the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699.  And here, it does.

As the Supreme Court explained, the flight risk of a noncitizen, such as Petitioner, with a final order of removal and a history of prior removals and illegal re-entries is apparent as such individuals "who reentered the country illegally after removal have demonstrated a willingness to violate the terms of a removal order, and they therefore may be less likely to comply with the reinstated order." *Guzman Chavez*, 594 U.S. at 544.

The Supreme Court in *Zadvydas* acknowledged that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690.  As such, the *Zadvydas* Court held that post-removal detention for six months is "presumptively reasonable."

13

*Id.* at 701.  Beyond six months, an alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" before the burden shifts to the government to demonstrate removal is likely.  *Id.* at 701.

As such, to set forth a Constitutional violation for Section 1231 detention, an individual must satisfy the *Zadvydas* test.  *See Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) (Explaining that "*Zadvydas*, largely, if not entirely forecloses due process challenges to § 1231 detention apart from the framework it established."); *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) (The *Zadvydas* "test articulates the outer bounds of the Government's ability to detain aliens … without jeopardizing their due process rights.").

Petitioner's Due Process challenge fails under his present circumstances.  Petitioner's first hurdle is that any *Zadvydas* challenge cannot be raised until Petitioner has been detained for six-months in post-final order custody.  *See Reid v. Donelan*, 390 F. Supp. 3d 201, 220 (D. Mass. 2019); *Lamotte v. Holder*, No. 13-cv-00582, 2013 WL 1629135, at *2 (D. Mass. Apr. 9, 2013). Here, Petitioner has been detained for one month, and as such, any claim that his detention is unlawful because his removal is not reasonably foreseeable is premature.  *See Farah v. U.S. Att'y Gen.,* 12 F.4th 1312, 1332–33 (11th Cir. 2021) (Explaining that "[i]f after six months he is still in custody and has not been removed from the United States, then he can challenge his detention under section 1231(a). But until then, his detention is presumptively reasonable under *Zadvydas*.); *Julce v. Smith*, No. CV 18-10163-FDS, 2018 WL 1083734, at *5 (D. Mass. Feb. 27, 2018) (Habeas petition deemed "premature at best" as it was filed after three months of post-final order detention).

But, even if Petitioner's detention stretches beyond six months as he pursues his withholding-only proceedings, such detention will remain permissible as analyzed under

*Zadvydas*.  The First Circuit recently determined that an individual, detained for more than four

years as he pursued withholding-only proceedings, could not make the initial showing to

demonstrate his detention violated the *Zadvydas* framework because his "situation is readily

distinguishable from *Zadvydas*."  *G.P.,* 103 F.4th at 901.  Unlike the two noncitizens in the

*Zadvydas* case who faced potentially permanent detention because of being stateless, the First

Circuit found that G.P.'s detention was finite because "if he is ultimately denied relief, the

government will be able to move forward with removing him" from the United States.  *Id.*  As

such, the First Circuit, joining the Fourth and Sixth Circuits, held that the individual, despite

being detained for four-years and with resolution of proceedings nowhere near imminent, "has

failed to show that there is no significant likelihood of his removal in the reasonably foreseeable

future."  *Id.* (internal quotations omitted).  At bottom, Petitioner's detention for one month,

"pending his withholding-only proceedings does not, standing alone, offend the Due Process

Clause."  *Castaneda*, 95 F.4th at 760.

Finally, as explained above, ICE complied with its regulatory authority in revoking

Petitioner's release and any claim that ICE violated the Constitution in doing so is without merit.

As noted, Petitioner makes a claim that his revocation was done without advance notice. The

regulation does not require advance notice, and neither does the Constitution.  *See Reyes v. King,*

No. 19 CIV. 8674 (KPF), 2021 WL 3727614, at *10 (S.D.N.Y. Aug. 20, 2021) (Explaining that

"the Due Process Clause of the Fifth Amendment does not entitle [p]etitioner to such a [pre-

detetion] hearing at this specified time, and [p]etitioner cites no authority within this Circuit that

counsels otherwise."); *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 929 (W.D. Tex. 2018)

(Finding no "due process right to not be snatched off the street without warning" when ICE

revoked discretionary parole and returned individual to custody.). The regulation requires that

ICE provide an informal interview to explain the basis for the revocation and to provide a written notice and ICE complied with both provisions.

Petitioner can challenge his detention and seek release through the regulatory provisions that apply for individuals detained with final orders of removal. Courts routinely conclude that such regulations are permissible to protect individual's Constitutional rights while detained. *See e.g., Moses v. Lynch*, No. 15-cv-4168, 2016 WL 2636352, at *4 (D. Minn. Apr. 12, 2016) ("When immigration officials reach continued-custody decisions for aliens who have been ordered removed according to the custody-review procedures established in the Code of Federal Regulations, such aliens receive the process that is constitutionally required."); *Portillo v. Decker*, No. 21 CIV. 9506 (PAE), 2022 WL 826941, at *6 (S.D.N.Y. Mar. 18, 2022) (Collecting cases supporting conclusion that the POCR framework has routinely been deemed constitutional and noting that petitioner had not "cite[d] legal authority in support of his generalized laments about the administrative process.").

Petitioner's detention is fully permissible and does not violate the Fifth Amendment's Due Process Clause and therefore his claim for release must be rejected.

## CONCLUSION

For the above reasons, Petitioner's assertion of unlawful detention in violation of statute, regulation, and the Constitution fails. As such, this Court should deny his plea for release.

LEAH B. FOLEY
United States Attorney

Dated: February 25, 2025    By:    */s/ Mark Sauter*
Mark Sauter
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
Tel.: 617-748-3347
Email: mark.sauter@usdoj.gov

16

## <u>CERTIFICATE OF SERVICE</u>

I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


Dated:  February 25, 2025                    By:    _/s/ Mark Sauter_
                                                    Mark Sauter
                                                    Assistant United States Attorney