**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Amilcar Antonio Avalos Ramos, ) | **CASE NO: 25-CV-10268-AK** |
| Petitioner, ) | |
| ) | **ORAL ARGUMENT REQUESTED** |
| vs. ) | |
| Antone Moniz, Superintendent, ) | |
| Plymouth County Correctional Facility, ) | |
| Respondent. ) | |

**REPLY MEMORANDUM IN SUPPORT OF**
**PETITION FOR WRIT OF HABEAS CORPUS**

Through the instant Reply Memorandum, Petitioner Amilcar Antonio Avalos Ramos responds to the papers submitted in opposition to his Petition for Writ of Habeas by Respondent, Doc No. 12, as contemplated by Rule 5 of the Federal Rules governing petitions for writ of habeas corpus filed in the District Courts of the United States.

*INTRODUCTION*

For more than two decades, the Judicial Branch has made clear that Executive detention of noncitizens for immigration purposes must be narrowly tailored to achieve one of three permissible goals in order to justify what would otherwise be a problematic infringement on an individual's liberty pursuant to a civil proceeding. One permissible goal for such detention is to ensure that a noncitizen does not commit crimes or otherwise endanger the public prior to her removal from the United States, should the U.S. Immigration Court ultimately adjudicate the noncitizen to be removable. This concept is often referenced in shorthand as dangerousness or danger to the community. A second permissible goal for such detention is to ensure that a noncitizen does not

abscond and thus will be available for removal from the United States, again should the U.S. Immigration Court ultimately deem the noncitizen to be removable. This concept is often referenced in shorthand as flight risk. The third permissible goal for such detention is to ensure that a noncitizen whom the U.S. Immigration Court has deemed to be removable is physically present at the time which the Executive intends to remove the noncitizen. This concept is often referenced in shorthand as prompt removal.

When the Executive commits a noncitizen to immigration custody for a purpose not designed to achieve one of these three goals, such detention is not authorized by law and violates the Substantive Due Process Clause's proscription against arbitrary deprivation of liberty. This is the case for Petitioner Amilcar Antonio Avalos Ramos ("Mr. Avalos Ramos") whose present immigration detention by the Executive – that is, U.S. Immigration and Customs Enforcement ("ICE") – serves no legitimate purpose.

In May of 2023, ICE released Mr. Avalos Ramos from immigration custody after having detained him for approximately four months because of his unlawful presence in the United States. ICE evaluated Mr. Avalos Ramos as a potential candidate for release because the agency had determined that it could not promptly remove Avalos Ramos from the United States due to Avalos Ramos's request for relief from removal which was pending before the U.S. Immigration Court. Before releasing Mr. Avalos Ramos, ICE was required to determine and in fact determined that Mr. Avalos Ramos was neither a danger to the community nor a flight risk. As a result of ICE's factual determinations, Mr. Avalos Ramos reentered society as a supervised releasee under ICE's supervision.

In January of 2025, ICE revoked Mr. Avalos Ramos's supervised releasee status and re-detained him. Yet, nothing material concerning Mr. Avalos Ramos's circumstances had changed.

ICE still could not – and cannot – promptly remove Mr. Avalos Ramos from the United States because of his pending proceeding before the U.S. Immigration Court. Moreover, ICE had no reason to believe – and still has no reason to believe – that Mr. Avalos Ramos has become either a danger to the community or a flight risk. Indeed, the only changed circumstances articulated by ICE to justify Mr. Avalos Ramos's re-detention is a change in the agency's priorities – that is, an increased focus on removing noncitizens it deems to be undesirable – and the agency's dissatisfaction with the U.S. Immigration Court system's slow pace of adjudicating the removability of such noncitizens. That is to say, according to ICE, the agency has deprived Mr. Avalos Ramos of his liberty as a litigation tactic to exert pressure on the U.S. Immigration Court so that it will adjudicate Avalos Ramos's removability faster. This is not a legitimate reason to deprive Mr. Avalos Ramos of his liberty, but rather is the very definition of arbitrary detention forbidden by the Substantive Due Process Clause of the Fifth Amendment.

Accordingly, based on the foregoing as well as the argument below, Mr. Avalos Ramos reiterates his request that the Court find his present detention by ICE to be unlawful and order his prompt release from immigration custody.

## STATEMENT OF RELEVANT FACTS

On or about January 17, 2023, ICE took Mr. Avalos Ramos into immigration custody for having reentered the United States unlawfully, after previously being ordered removed. *See* Decl. of Amilcar Antonio Avalos Ramos ("Avalos Ramos Decl."), Doc No. 2, at ¶ 4; Decl. of Ass't Field Off. Dir. Keith Chan ("Chan Decl."), Doc No. 12-1, at ¶ 10. On or about May 3, 2023, ICE released Mr. Avalos Ramos from immigration custody pursuant to an order of supervision. *See* Avalos Ramos Decl., Doc No. 2, at ¶ 7 & Ex. 1; Chan Decl., Doc No. 12-1, at ¶ 12. Before considering Mr. Avalos Ramos for release, ICE found that Avalos Ramos's removal from the

United States was not immediately practicable, *see* 8 C.F.R. § 241.4(e)(1), because of his pendent request for relief from removal before the U.S. Immigration Court. *See* Avalos Ramos Decl., Doc No. 2, at ¶¶ 5-6; Chan Decl., Doc No. 12-1, at ¶¶ 10-11. Before releasing Mr. Avalos Ramos, ICE was required to find and did find that Avalos Ramos was neither a danger to the community nor a flight risk. *See* 8 C.F.R. §§ 241.4(e)(2)-(4), (6).

On or about January 26, 2025, ICE re-detained Mr. Avalos Ramos. *See* Avalos Ramos Decl., Doc No. 2, at ¶ 11; Chan Decl., Doc No. 12-1, at ¶ 14. At the time of Mr. Avalos Ramos's re-detention and continuing to the present, Avalos Ramos's removal proceeding before the U.S. Immigration Court has remained pending such that ICE has been unable to promptly remove Avalos Ramos from the United States. *See* Avalos Ramos Decl., Doc No. 2, at ¶¶ 5-6; Chan Decl., Doc No. 12-1, at ¶¶ 10-11, 18. At the time of Mr. Avalos Ramos's re-detention and continuing to the present, ICE has asserted no reason to believe that Avalos Ramos has become a danger to the community or a flight risk. *See*, *generally*, *id.*, Doc No. 12-1. Rather, ICE's asserted justification for re-detaining Mr. Avalos Ramos was to pressure the U.S. Immigration Court for a faster resolution of Avalos Ramos's removal proceeding, with the hope of expediting Avalos Ramos's possible removal from the United States. *See id.*, Doc No. 12-1, at ¶¶ 14, 16-18; Notice of Revocation of Release, Doc No. 1-2.

## *ARGUMENT*

I. MR. AVALOS RAMOS IS BEING DETAINED FOR IMPERMISSIBLE REASONS, HIS DETENTION IS NOT AUTHORIZED BY LAW AND HE MUST BE RELEASED

Respondent asserts that ICE properly returned Mr. Avalos Ramos to immigration custody in January of 2025 pursuant to the authority conferred upon the agency by Section 241(a)(6) of the Immigration and Nationality Act – that is, the provision of the Act which allows ICE to detain noncitizens who are subject to final removal orders for the purpose of removing them from the

4

United States. *See* Resp't Mem. in Opp'n to Pet. for Writ of Habeas Corpus ("Resp't Opp'n"), Doc No. 12, at pp. 11-13 (citing 8 U.S.C. § 1231(a)(6)). The problem with Respondent's assertion is that the Substantive Due Process Clause limits ICE's detention authority – whether rooted in Section 241(a)(6) or otherwise – such that the exercise of this authority must be designed to achieve one of three goals: to prevent a noncitizen from endangering the community prior to removal, to prevent a noncitizen from absconding prior to removal or to promptly remove a noncitizen from the United States. Because ICE has acknowledged that its present detention of Mr. Avalos Ramos is related to none of these three goals, ICE lacks the authority to detain Mr. Avalos Ramos, Avalos Ramos's detention is not authorized by law and Avalos Ramos must be released.

    A.    Mr. Avalos Ramos Was Released from Immigration Custody in May of 2023 Because His Detention Served No Permissible Purpose.

For more than two decades, the Supreme Court has required the Executive to show that its detention of noncitizens for immigration purposes is designed to achieve one of three specific regulatory goals: "ensuring the appearance of aliens at future immigration proceedings … preventing danger to the community" or "assuring the alien's presence at the moment of removal." *Zadvydas v. Davis*, 533 U.S. 678, 690, 699 (2001) (interpreting 8 U.S.C. § 1231(a)(6)) (internal quotations omitted); *accord. Jimenez v. Cronen*, 317 F. Supp. 3d 626, 652 (D. Mass. 2018) (Wolf, J.).[1] For more than two decades, the Executive has acknowledged this substantive limitation on its immigration detention authority – specifically as applied to noncitizens with removal orders like Mr. Avalos Ramos – by implementing Post Order Custody Review ("POCR") regulations

---

[1] *See also Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018) (purpose of detention authorized by Immigration and Nationality Act Sections 235(b), 236(a) and 236(c) is to give "immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made" respecting removal) (citing 8 U.S.C. §§ 1225(b), 1226(a), 1226(c)).

which facilitate the release from immigration custody those noncitizens whose detention serves none of these regulatory goals. *See* 8 C.F.R. § 241.4(e) (outlining criteria for release); U.S. Dep't of Justice, *Detention of Aliens Ordered Removed*, 65 Fed. Reg. 80281-01, 80282 (Final Rule Dec. 21, 2000) (Regulation 241.4 "implements an important program in furtherance of congressional and executive policy to ensure the removal of aliens … and to protect the safety of our citizens and lawful residents against dangerous individuals or those posing a flight risk.").[2]

When ICE applied the POCR regulations to the circumstances surrounding Mr. Avalos Ramos's immigration detention in May of 2023, the agency determined that Avalos Ramos's custody served no legitimate purpose. *See* Avalos Ramos Decl., Doc No. 2, at ¶ 7 & Ex. 1. ICE made this determination because the agency understood that it could not promptly remove Mr. Avalos Ramos from the United States while the U.S. Immigration Court was adjudicating his asserted defenses to removal. *See* Chan Decl., Doc No. 12-1, at ¶¶ 10-11; *see also* 8 C.F.R. §§ 241.8(e), 1208.16, 1208.31(e). ICE also made this determination because the appropriate agency official had found, after reviewing Mr. Avalos Ramos's file, that Avalos Ramos was neither a danger to the community nor a flight risk. *See* 8 C.F.R. §§ 241.4(e)(2)-(4), (6); *see also* 8 C.F.R. § 241.4(h). Accordingly, ICE released Mr. Avalos Ramos from custody, given its understanding that "§ 1231(a)(6) and § 241.4 do not authorize detention … if the alien will not be immediately removed and is not a flight risk or dangerous." *Jimenez*, 317 F. Supp. 3d at 652; *see also, e.g.*, *You v. Nielsen*, 321 F. Supp. 3d 451, 463 (S.D.N.Y. 2018) (Torres, J.) (neither 8 U.S.C. § 1231(a)(6) nor 8 C.F.R. § 241.4 authorize detention without finding that noncitizen is "risk to the

---

[2] *Cf.* 65 Fed. Reg. 80281-01, 80283 ("… detention under Section 241(a)(6) of the Act, 8 U.S.C. 1231(a)(6), is not unconstitutional where the alien's removal cannot be effected immediately, the alien is determined to be a danger or flight risk if released, and he or she is afforded a periodic and meaningful opportunity to seek release from custody.").

community or unlikely to comply with the order of removal") (internal quotation omitted); *Hernandez-Lara v. Lyons*, 10 F.4th 19, n.5 (1st Cir. 2021) ("… fundamentally, any detention must bear a reasonable relation to its purpose …") (internal quotation omitted).

    B.    Mr. Avalos Ramos's Re-Detention Since January of 2025 Continues to Serve No Permissible Purpose

When ICE re-detained Mr. Avalos Ramos in January of 2025, nothing material had changed since May of 2023. ICE has not asserted – and cannot assert – that Avalos Ramos has, since May of 2023, become a danger to the community or a flight risk. *See* Chan Decl., Doc No. 12-1, at ¶¶ 14, 16-18; Notice of Revocation of Release, Doc No. 1-2.[3] Moreover, ICE has not asserted – and cannot assert – that the agency is able to promptly remove Mr. Avalos Ramos from the United States, given the pendency of Avalos Ramos's proceeding before the U.S. Immigration Court, a proceeding which still has no end in sight. *See* Chan Decl., Doc No. 12-1, at ¶¶ 11, 18; *see also* 8 C.F.R. §§ 1208.16, 1208.31(e).[4] Rather, the only coherent justification presented by ICE for its abrupt re-detention of Mr. Avalos Ramos is that, as of January 2025, "ICE has increased its focus on effectuating the removal of individuals with final removal orders from the United

---

[3] While ICE's witness alleges that "ICE database records indicate that Petitioner had numerous ATD [Alternatives to Detention] violations," he does not suggest that any such violation led ICE to determine that Mr. Avalos Ramos had become a danger or a flight risk. Chan Decl., Doc No. 12-1, at ¶ 13. Moreover, ICE does not assert that any of these vague violations – the existence of which Mr. Avalos Ramos contests, *see* Avalos Ramos Decl., Doc No. 2, at ¶ 10 – informed the agency's decision to re-detain Avalos Ramos. *See* Chan Decl., Doc No. 12-1, at ¶ 14; 8 C.F.R. §§ 241.4(*l*)(1), (2)(ii).

[4] Respondent's repeated reference to the possibility of removing Mr. Avalos Ramos to a third country – *i.e.*, one other than Avalos Ramos's country of origin, El Salvador – has no bearing on ICE's ability to promptly remove Avalos Ramos from the United States. *See*, *e.g.*, Resp't Opp'n, Doc No. 12, at pp. 4, 10 & n.2. This is so because, even if ICE designates a proposed alternative country to which it intends to remove Mr. Avalos Ramos, Avalos Ramos will have the right to contest the lawfulness of ICE's proposal through his current proceeding before the U.S. Immigration Court, just as he is contesting the propriety of his removal to El Salvador. *See* 8 U.S.C. § 1231(b)(3); *see also* 8 C.F.R. §§ 241.8(e), 1208.16, 1208.31. Under these circumstances, ICE will still be unable to promptly effect Mr. Avalos Ramos's removal from the United States.

States" and thus detained Avalos Ramos so his removal proceeding "could be expedited by moving his case to the Immigration Court's detained docket." Chan Decl., Doc No. 12-1, at ¶ 14; *see also id.*, Doc No. 12-1, at ¶ 18. This explanation for Mr. Avalos Ramos's re-detention is remarkable.

Viewed in its best light, ICE's purported justification for its re-detention of Mr. Avalos Ramos is to pressure the U.S. Immigration Court to adjudicate Avalos Ramos's removal defenses more quickly. That is to say, ICE has used Mr. Avalos Ramos's loss of liberty as a tactic designed to obtain a litigation advantage by increasing the likelihood that the U.S. Immigration Court will advance the date of Avalos Ramos's merits hearing and thus the adjudication of his request for relief from removal. *See* Imm. Ct. Prac. Man. § 9.1(e) ("Proceedings for detained aliens are expedited.").[5] Viewed in its worst light, ICE's explanation for its re-detention of Mr. Avalos Ramos is that the new directive for the agency under the recently inaugurated presidential administration is to detain noncitizens with final removal orders to show the public its progress keeping unlawful aliens off of the streets.

What is remarkable about ICE's explanation is that, regardless of how it is viewed, it is completely unmoored from any lawful reason that could justify Mr. Avalos Ramos's ongoing detention. While Respondent is correct that the broad language of the POCR regulations do provide ICE with "significant discretion to revoke an Order of Supervision and return an individual to custody," the POCR regulations cannot relieve ICE of its obligation to detain noncitizens only for permissible purposes. Resp't Opp'n, Doc No. 12, at pp. 6, 10-11 (citing 8 C.F.R. § 241.4(*l*)(2)); *see Demore v. Kim*, 538 U.S. 510, 532-33 (2003) (Kennedy, J.) (conc.) (Due Process Clause

---

[5] Pursuant to Fed. R. Evid. 201, Mr. Avalos Ramos respectfully requests that the Court take judicial notice of the U.S. Department of Justice, Executive Office for Immigration Review Immigration Court Practice Manual, which is available at https://www.justice.gov/eoir/reference-materials/ic/chapter-9/1.

protects noncitizens against detention that "is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons."). To the extent the POCR regulations broadly authorize ICE to revoke the release of and re-detain noncitizens like Mr. Avalos Ramos if the "purposes of release have been served" or if "any other circumstances[] indicate that release would no longer be appropriate," 8 C.F.R. §§ 241.4(*l*)(2)(i), (iv), such circumstances must relate to the noncitizen's dangerousness, flight risk or suitability for prompt removal. *See*, *supra*, Section I.A.

The only other explanation offered by ICE to attempt to justify Mr. Avalos Ramos's re-detention, one which is found in the Notification of Revocation of Release that the agency provided to Mr. Avalos Ramos after his first week in detention, is the assertion that "there is a significant likelihood of [Avalos Ramos's] removal in the reasonably foreseeable future." Notice of Revocation of Release, Doc No. 1-2, at p. 1; *see also* Resp't Opp'n, Doc No. 12, at p. 10 (citing Doc No. 1-2); Chan Decl., Doc No. 12-1, at ¶¶ 14-17. However, this explanation is a *non sequitur* because the question of whether there is a "significant likelihood that [an] alien will be removed in the reasonably foreseeable future" is the standard applied by ICE for determining whether it must release a noncitizen from immigration custody whom the agency has determined <u>is a danger or a flight risk</u>. 8 C.F.R. § 241.13(g) (absent special circumstances, ICE must release noncitizen from immigration custody – irrespective of danger or flight risk – if removal is not significantly likely to occur in reasonably foreseeable future). This is the so-called "*Zadvydas* framework" or a "*Zadvydas* challenge" to immigration detention, *i.e.*, an assertion by a noncitizen that ICE is not permitted to detain her even after the agency has found her to be a danger or a flight risk. Resp't Opp'n, Doc No. 12, at pp. 3-5, 13-15. Mr. Avalos Ramos does not fall into the *Zadvydas* framework and has not raised a *Zadvydas* challenge because ICE has already found that he is

9

neither a danger nor a flight risk. *See* 8 C.F.R. § 241.13(b)(1) ("The [Executive] may release an alien under an order of supervision under § 241.4 if it determines that the alien would not pose a danger to the public or a risk of flight, without regard to the likelihood of the alien's removal in the reasonably foreseeable future."). Accordingly, the proper yardstick to measure the lawfulness of Mr. Avalos Ramos's ongoing detention is whether he is a danger, whether he is a flight risk and whether ICE is able to promptly remove him from the United States. *See*, *supra*, Section I.A. Because the uncontested record before the Court answers all three of these questions with a resounding no, Mr. Avalos Ramos's current immigration custody is authorized by neither the Immigration and Nationality Act nor the Substantive Due Process Clause of the Fifth Amendment and thus should end.

## *CONCLUSION*

Based on the foregoing, Mr. Avalos Ramos reiterates his request that the Court find his present detention by ICE to be unlawful and order his prompt release from immigration custody.

## *REQUEST FOR ORAL ARGUMENT*

Mr. Avalos Ramos respectfully requests to be heard at oral argument because the above-captioned matter raises critical and complex questions of law concerning the rights of noncitizens who are the subject of final orders of removal to be free from arbitrary arrest and detention.

Respectfully submitted,
AMILCAR ANTONIO AVALOS RAMOS,

Dated: March 3, 2025

By his attorneys,

*/s/ Ethan R. Horowitz*
Ethan R. Horowitz, BBO# 674669
Northeast Justice Center
50 Island Street, Suite 203B
Lawrence MA 01840
(978) 888-0624

ehorowitz@njc-ma.org

Claire E. Maguire, BBO # 709426
Northeast Justice Center
181 Union Street, Suite 201B
Lynn MA 01901
(978) 888-0661
cmaguire@njc-ma.org

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2025, the foregoing Reply Memorandum was electronically filed with the Clerk of the Court through the CM/ECF system, which will send notification of such filing to registered participants, including counsel for the Respondent.

/s/ Ethan Horowitz
_____

    Dated: March 3, 2025

Ethan R. Horowitz
BBO # 674669